1
Hassan A. Zavareei (SBN 181547)
Andrea Gold (*pro hac vice forthcoming*)

2
TYCKO & ZAVAREEI LLP
1828 L. Street, NW, Suite 1000

3
Washington, D.C 20036
Telephone: (202) 973-0900

4
Facsimile: (202) 973-0950
hzavareei@tzlegal.com

5
agold@tzlegal.com

6
Andrew J. Shamis, Esq. (*pro hac vice forthcoming*)

7
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 400

8
Miami, Florida 33132
Telephone: 305-479-2299

9
ashamis@shamisgentile.com

10
Scott Edelsberg, Esq. (*pro hac vice forthcoming*)
EDELSBERG LAW, PA

11
19495 Biscayne Blvd #607
Aventura, FL 33180

12
Telephone: 305-975-3320

13
scott@edelsberglaw.com

14
*Counsel for Plaintiff and Proposed Class*

15

16
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

17

18
SCOTT ROSSO, individually and on behalf of
all others similarly situated,

Case No. 18-6362

19
                    Plaintiff,

**CLASS ACTION COMPLAINT**

20
          v.

21
CHEETAH MOBILE AMERICA, INC.,
A CALIFORNIA LIABILITY COMPANY,

**JURY TRIAL DEMANDED**

22

23
                    Defendant.

24

25

26

27

28

**CLASS ACTION COMPLAINT**

1.      Plaintiff Scott Rosso, brings this action against Defendant, Cheetah Mobile America Inc., to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

**NATURE OF THE ACTION**

2.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3.      Defendant is a mobile internet company that designs and sell various mobile-based applications. To promote its services, Defendant engages in unsolicited marketing, harming thousands of consumers in the process.

4.      At issue here is Defendant's automated text messaging marketing that was approved, consented to, controlled, and/or ratified by Defendant. Further, Defendant knowingly received and retained monetary benefit from the telemarketing activities at issue.

5.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of himself and members of the class, and any other available legal or equitable remedies.

**JURISDICTION AND VENUE**

6.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is headquartered here, and because Defendant's unauthorized marketing scheme was directed by Defendant from and/or into this District, including to Plaintiff.

**PARTIES**

8.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

CLASS ACTION COMPLAINT

1    9.    Defendant is a California Corporation whose principal office is located at 4151 Middlefield

2  Road, Suite 100 Palo Alto, California 94303.  Defendant directs, markets, and provides its business activities

3  throughout the State of California and Florida.

4                                    **THE TCPA**

5    10.    The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an

6  automatic telephone dialing system; (3) without the recipient's prior express consent.    47 U.S.C. §

7  227(b)(1)(A).

8    11.    The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that

9  has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential

10  number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

11    12.    In an action under the TCPA, a plaintiff must only show that the defendant "called a

12  number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."

13  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir.

14  2014).

15    13.    The Federal Communications Commission ("FCC") is empowered to issue rules and

16  regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are

17  prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and

18  invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also

19  recognized that wireless customers are charged for incoming calls whether they pay in advance or after the

20  minutes are used.  *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket

21  No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

22    14.    In 2012, the FCC issued an order tightening the restrictions for automated telemarketing

23  calls, requiring "prior express **written** consent" for such calls to wireless numbers.  *See In the Matter of Rules*

24  *& Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)

25  (emphasis supplied).

26    15.    To obtain express written consent for telemarketing calls, a defendant must establish that

27  it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of

28                                         2

1   the consequences of providing the requested consent….and having received this information, agrees

2   unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules &*

3   *Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33,

4   1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

5          16.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation

6   of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in,

7   property, goods, or services." 47 C.F.R. § 64.1200(f)(12).   In determining whether a communication

8   constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v.*

9   *Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

10         17.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good,

11  product, or service' where the implication of an improper purpose is 'clear from the context.'"  *Id.* (citing

12  *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

13         18.     "'Telemarketing' occurs when the context of a call indicates that it was initiated and

14  transmitted to a person for the purpose of promoting property, goods, or services."  *Golan*, 788 F.3d at 820

15  (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12);  *In re Rules and Regulations Implementing the*

16  *Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

17         19.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or

18  services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone*

19  *Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients

20  are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future.  Id.*

21         20.     In other words, offers "that are part of an overall marketing campaign to sell property,

22  goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing*

23  *the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24         21.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it

25  obtained the plaintiff's prior express consent.  *See In the Matter of Rules and Regulations Implementing the Tel.*

26  *Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-

27  telemarketing and non-advertising calls").

28

3

22.      Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

23.      As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any *additional* harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

**FACTS**

24.      On or about August 11, 2017, Defendant sent two telemarketing text messages to Plaintiff's cellular telephone number ending in 5971 (the "5971 Number"):



CLASS ACTION COMPLAINT

25.     The first text message states, "Protect your privacy with one of the worlds leading security app rated 4.7 stars and trusted by over 500 Million download on Google Play."

26.     The second text message contains a link to download Defendant's mobile application, "Security Master."

27.     Defendant's website, https://www.cmcm.com/en-us/, advertises the same "Security Master" mobile application.

28.     The two text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

29.     Defendant's text messages constitute telemarketing because they encourage the future purchase or investment in property, goods, or services, i.e., selling Plaintiff the "Security Master" mobile application.

30.     The link in the second text message advertises Defendant's Application "Security Master," which Defendant sends to promote its business.

31.     Upon information and belief, Defendant, or someone acting on Defendant's behalf, caused the identical two text messages to be sent to Plaintiff.

32.     At no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS.

33.     Plaintiff is the subscriber and sole user of the 5971 Number, and is financially responsible for phone service to the 5971 Number.

34.     The impersonal and generic nature of Defendant's text message, demonstrates that Defendant utilized an ATDS in transmitting the messages. *See Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that

CLASS ACTION COMPLAINT

1  defendants used an ATDS where messages were advertisements written in an impersonal manner and sent

2  from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-

3  132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing

4  that mass messaging would be impracticable without use of an ATDS)).

5        35.    The text messages originated from telephone number 273-67, a number which upon

6  information and belief is owned and operated by Defendant.

7        36.    The number used by Defendant (273-67) is known as a "short code," a standard 5-digit

8  code that enables Defendant to send SMS text messages *en masse*, while deceiving recipients into believing

9  that the message was personalized and sent from a telephone number operated by an individual.

10       37.    Short codes work as follows:  Private companies known as SMS gateway providers have

11  contractual arrangements with mobile carriers to transmit two-way SMS traffic.  These SMS gateway

12  providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are

13  responsible for relaying those messages to the intended mobile phone. This allows for the transmission of

14  a large number of SMS messages to and from a short code.

15       38.    Specifically, upon information and belief, Defendant utilized a combination of hardware

16  and software systems to send the text messages at issue in this case.  The systems utilized by Defendant

17  have the current capacity or present ability to generate or store random or sequential numbers or to dial

18  sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated

19  fashion without human intervention.

20       39.    The systems utilized by Defendant to transmit the subject text messages also stores

21  numbers and dials them automatically to send text messages to a stored list of phone numbers as part of

22  scheduled campaigns. *See Marks v. Crunch San Diego, LLC*, No. 14-56834, 2018 U.S. App. LEXIS 26883, at

23  *27 (9th Cir. Sep. 20, 2018).

24       40.    Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of

25  his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text

26  messages also inconvenienced Plaintiff and caused disruption to his daily life.

27

28

CLASS ACTION COMPLAINT

# CLASS ALLEGATIONS

## PROPOSED CLASS

41.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

42.     Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent.**

43.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

## NUMEROSITY

44.     Upon information and belief, Defendant has placed automated and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

## COMMON QUESTIONS OF LAW AND FACT

46.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> **(1)** Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

CLASS ACTION COMPLAINT

**(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

**(3)** Whether Defendant's conduct was knowing and willful;

**(4)** Whether Defendant is liable for damages, and the amount of such damages; and

**(5)** Whether Defendant should be enjoined from such conduct in the future.

47.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

## TYPICALITY

48.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

49.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

50.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example,

8

CLASS ACTION COMPLAINT

one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)
**(On Behalf of Plaintiff and the Class)**

52.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

53.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

54.     "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

55.     Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined below.

56.     These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

57.     Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

58.     Defendant knew that it did not have prior express consent to make these calls, and

9

CLASS ACTION COMPLAINT

knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

59. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiff, Scott Rosso, on behalf of himself and the other members of the Class, pray for the following relief:

        a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

        a. An injunction prohibiting Defendant from using an automatic telephone dialing system to text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

        c. An award of actual and statutory damages; and

        d. Such further and other relief the Court deems reasonable and just.

**COUNT II**
**Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

60. Plaintiff re-allege and incorporate paragraphs 1-46 as if fully set forth herein.

61. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

62. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

63. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

CLASS ACTION COMPLAINT

1      64.     As a result of Defendant's violations, Plaintiff and the Class Members are entitled to

2 an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §

3 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

4      **WHEREFORE**, Plaintiff, Scott Rosso, on behalf of himself and the other members of the

5 Class, pray for the following relief:

6          a.   A declaration that Defendant's practices described herein violate the Telephone

7               Consumer Protection Act, 47 U.S.C. § 227;

8          b.   An injunction prohibiting Defendant from using an automatic telephone dialing

9               system to call and text message telephone numbers assigned to cellular telephones

10              without the prior express permission of the called party;

11          c.   An award of actual and statutory damages; and

12          d.   Such further and other relief the Court deems reasonable and just.

13

14                             **<u>JURY DEMAND</u>**

15   Plaintiff and Class Members hereby demand a trial by jury.

16

17 Dated: October 17, 2018                  Respectfully submitted,

18                                     /s/ Hassan A. Zavareei

19                             Hassan A. Zavareei (SBN 181547)
Andrea Gold (*pro hac vice forthcoming*)

20                             TYCKO & ZAVAREEI LLP
1828 L. Street, NW, Suite 1000

21                             Washington, D.C 20036
Telephone: (202) 973-0900

22                             Facsimile: (202) 973-0950
hzavareei@tzlegal.com

23                             agold@tzlegal.com

24                             Andrew J. Shamis, Esq. (*pro hac vice forthcoming*)
SHAMIS & GENTILE, P.A.

25                             14 NE 1st Avenue, Suite 400
Miami, Florida 33132

26                             Telephone: 305-479-2299
ashamis@shamisgentile.com

27

28                             11

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Scott Edelsberg, Esq. (*pro hac vice forthcoming*)
EDELSBERG LAW, PA
19495 Biscayne Blvd #607
Aventura, FL 33180
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Class*

---

12

CLASS ACTION COMPLAINT